**CITY OF GRAND FORKS, a municipal corporation, Petitioner, Appellant and Cross-Appellee,**

v.

**GRAND FORKS HERALD, INC., Respondent and Appellee,**

**S. D. Knutson, Respondent, Appellee and Cross-Appellant.**

**Civ. No. 9889.**

Supreme Court of North Dakota.

June 25, 1981.

Jay H. Fiedler, Asst. City Atty., Grand Forks, for petitioner, appellant and cross-appellee City of Grand Forks.

Thomas John Kuchera, Grand Forks for respondent and appellee Grand Forks Herald, Inc.

Mack, Moosbrugger, Ohlsen, Dvorak, Grand Forks, for respondent, appellee and cross appellant S. D. Knutson; John H. Moosbrugger, Grand Forks, on brief.

PAULSON, Justice.

The City of Grand Forks appeals from a judgment entered against it by the District Court of Grand Forks County on October 29, 1980. The judgment decreed that the Grand Forks Herald had a right to inspect the personnel file of S. D. Knutson, the former chief of police for the City of Grand Forks, because the personnel file maintained by the city's personnel director constituted a "public record" within the meaning of Article XI, § 6 of the North Dakota Constitution and § 44–04–18 of the North Dakota Century Code. We affirm.

Knutson was employed by the City as chief of police until August 20, 1973, when he resigned from such position. In 1980,

Knutson was a candidate for the office of county commissioner of Grand Forks County. On August 18, 1980, a reporter for the Grand Forks Herald appeared in the office of Jason Graba, the personnel director for the City, and requested an opportunity to inspect the City's records relating to Knutson's employment and the terms and conditions of a negotiated settlement of resignation between the City and Knutson. Graba refused to allow the reporter to inspect the records.

The City commenced this action on August 25, 1980. In its complaint, the City stated that the documents in the personnel file of Knutson are not subject to disclosure, notwithstanding the provisions of § 44–04–18, N.D.C.C. In its prayer for relief, the City requested a declaratory judgment determining the rights and liabilities of the parties and also determining whether or not personnel files are public records subject to public inspection. The Grand Forks Herald sought a writ of mandamus, but its request was denied. The Herald submitted its answer on September 15, 1980, and asserted that the City did not have standing to seek a declaratory judgment under § 32–23–02, N.D.C.C.; that the City's complaint failed to state a claim on which relief could be granted; and that the City's claim was frivolous. Knutson submitted his answer on September 15, 1980, and asserted that the Herald had no legitimate reason for inspecting the contents of his personnel file because he was no longer involved in politics. The North Dakota Newspaper Association, an organization composed of the State's daily and weekly newspapers, filed a brief as *amicus curiae*.

A hearing was held on September 17, 1980, in which Graba testified as to particular items generally found in personnel files maintained by the City. Graba did not testify as to which documents were specifically contained in the Knutson file but he testified that the personnel files maintained by the City generally contained the following documents: work evaluations, salary changes, IRS forms, insurance matters, retirement matters, union dues, medical insurance coverage, credit reports, and reports relating to mental illness or alcoholism. The district court issued its findings of fact, conclusions of law, and order for judgment on October 20, 1980. The district court determined that the City had a right to declaratory relief under Chapter 32–23, N.D.C.C.; and that the personnel file maintained by the City was a public record within the meaning of Article XI, § 6 of the North Dakota Constitution, and § 44–04–18, N.D.C.C. The district court did not open or review the contents of Knutson's personnel file. Judgment was entered against the City on October 29, 1980.

The City filed its notice of appeal on October 29, 1980, and on November 4, 1980, the City presented a motion to the district court for an order staying the enforcement of the judgment during the pendency of the appeal. The district court issued an order which stayed the enforcement of the judgment during the pendency of the appeal on November 4, 1980.

Knutson presented a motion for a new trial and an alternative motion to amend the judgment on November 7, 1980. Knutson also submitted to the district court a petition for supplemental relief. He requested that the district court make an *in camera* inspection of his personnel file to determine if any of the contents of the file did not constitute a public record. This court issued an order on January 9, 1981, which remanded the case to the district court for further proceedings. The district court issued an order on January 28, 1981, in which the court not only denied Knutson's request for supplemental relief, but also his motions for a new trial and for an amended judgment. The district court did not conduct an *in camera* inspection of Knutson's personnel file. Knutson filed a notice of appeal from the judgment and from the January 28, 1981, order issued by the district court.

The parties to this appeal present three issues for our consideration:

1. Whether or not Knutson's right to due process and equal protection of the law under the Fourteenth

Amendment to the Constitution of the United States, and Article I, § 1 of the North Dakota Constitution was violated by the procedures used by the district court in the case.

2. Whether or not municipal personnel files are public records subject to disclosure pursuant to § 44–04–18, N.D. C.C.

3. Whether or not the disclosure of the contents of his personnel file would constitute an impermissible invasion of Knutson's privacy.

I

The first issue concerns whether or not Knutson's right to due process and equal protection was violated by the procedures used by the district court. Knutson contends that the rapid scheduling of the trial did not allow him any time to prepare for trial or to conduct discovery proceedings. Trial was scheduled two days after Knutson submitted his answer. In addition, Knutson contends that the failure of the City to give notice of entry of judgment was a defect which renders the notice of appeal defective.

Knutson contends that his rights to due process were violated in three areas. First, he contends that he did not have time to prepare for trial and therefore did not have adequate representation of counsel. Second, Knutson contends that any information contained in his personnel file is not subject to inspection because disclosure would violate his right to pursue an occupation and protect his reputation under Article I, § 1 of the North Dakota Constitution. Finally, Knutson contends that he was never given notice of the items contained in his personnel file, nor was he given the opportunity to review its contents.

Rule 57 of the North Dakota Rules of Civil Procedure provides as follows:

"RULE 57—DECLARATORY JUDGMENTS

"The procedure for obtaining a declaratory judgment pursuant to chapter 32–23, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

The procedure in actions for a declaratory judgment is similar to that in an ordinary civil action. However, Rule 57, N.D.R. Civ.P., also contains a provision which allows the court to order a speedy hearing of an action for a declaratory judgment and the court may also advance the case on the calendar. A similar provision is contained in Rule 57 of the Federal Rules of Civil Procedure. Implicit in Rule 57 is the assumption that prior to the order for a speedy hearing, the matter at issue will have been joined by the filing of a responsive pleading. *Drinan v. Nixon*, 364 F.Supp. 853 (D.Mass.1973), *affirmed without opinion* 502 F.2d 1158 (1st Cir. 1973).

The purpose of the provision is to enable the court to expedite adjudication in a proper case in order to prevent the accrual of damages or to further the early adjudication of a controversy. 6 Moore's Federal Practice ¶ 57.29; Wright & Miller, Federal Practice and Procedure: Civil § 2751 and § 2768. The fundamental requisite of due process of law is the opportunity to be heard. *McVeigh v. United States*, 78 U.S. (11 Wall.) 259, 20 L.Ed. 80 (1870). However, the nature of procedural due process is such that the procedures used are not inflexible. *Cafeteria and Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The procedure authorized by Rule 57 for a speedy hearing in an action for a declaratory judgment does not violate due process because it advances many worthy objectives with a minimal degree of interference with personal rights. In addition, Rule 57 must be liberally construed to attain the objectives of the declaratory remedy, that is, § 32–23–12, N.D.C.C.

■ Knutson's contentions are more properly the bases for determining whether or not the district court abused its discretion by imposing a limitation upon the period within which Knutson could conduct discovery proceedings and otherwise prepare for the trial. Because Knutson contends that the district court's actions were detrimental to him, he must establish that the district court acted in an arbitrary, unreasonable, or unconscionable manner. *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208, 218 (1979). Abuse of discretion by the trial court is never assumed and must be affirmatively established. *Davis v. Davis*, 268 N.W.2d 769 (N.D.1978). Knutson has failed to establish how the district court's actions constituted an abuse of discretion and the record is devoid of any evidence which would indicate that an abuse of discretion occurred and that Knutson is entitled to a new trial. Similarly, the failure of the City to give notice of the entry of judgment was a procedural defect which cannot be viewed as prejudicial error. Any defect that existed was cured on the remand of the case to the district court when Knutson submitted a petition for supplemental relief as well as a motion for a new trial and an alternative motion to amend the judgment.

■ Knutson contends that any information contained in his personnel file is not subject to inspection because disclosure would violate his right to pursue an occupation and protect his reputation under Article I, § 1 of the North Dakota Constitution, which provides:

"*Section 1.* All men are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness."

In the absence of the actual disclosure of the contents of his personnel file, it is impossible to conclude that such disclosure could violate Knutson's rights to pursue an occupation and protect his reputation. No person or entity responsible for disclosure of the contents of Knutson's personnel file may act with impunity.

■ Knutson also asserts that he was never given notice of the items to be placed in his personnel file and was not given the opportunity to review the contents of his personnel file. Knutson bases his argument on the fact that teachers have the right, under § 15–38.2–04, N.D.C.C., to be given notice of a complaint before it is to be placed in their personnel files. The denial of such an opportunity in the instant case, Knutson asserts, is a violation of his right to equal protection. However, Knutson did have the right to inspect the contents of his personnel file. Thus, the sole basis of his contention is that he was entitled to notice when additional items were added to the contents of his personnel file.

Section 15–38.2–04, N.D.C.C., is concerned only with teachers employed at an educational institution supported by public funds and not with municipal employees. Knutson's argument is directed to the fact that no similar statute gives him the right to notice of the contents of his personnel file. No question of equal protection is present here because § 15–38.2–04, N.D.C.C., applies only to teachers and Knutson is not a member of that particular class. No statutory or constitutional provisions can be construed to provide him with a right of notice; thus, no question of disparate treatment arises here.[1]

1. Even if we accept Knutson's contention that teachers in public schools and municipal employees are similarly circumstanced, but are treated unequally, we note that the Equal Protection Clause of the Federal Constitution does not mean that a State may not draw lines that treat one class of individuals or entities different from the others. The test is whether or not the difference in treatment is an invidious discrimination. *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966). The measure of equal protection has been variously described as whether or not the classification is wholly unrelated to the objective of the statute [*Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)] or whether or not any state of facts reasonably may be conceived to justify the statutory discrimination [*McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)]. However, this traditional test has

## II

■ The second issue is concerned with whether or not municipal personnel files are public records subject to disclosure under § 44–04–18, N.D.C.C., which provides:

"*44–04–18. Access to public records— Penalty.—*

"1. Except as otherwise specifically provided by law, all records of public or governmental bodies, boards, bureaus, commissions or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be public records, open and accessible for inspection during reasonable office hours.

"2. Violations of this section shall be punishable as an infraction."

Article XI, § 6 of the North Dakota Constitution provides:

"*Section 6.* Unless otherwise provided by law, all records of public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be public records, open and accessible for inspection during reasonable office hours." [Art. amd. 103, approved November 7, 1978.]

This issue is one of first impression. The City contends that because Chapter 44–04, N.D.C.C., does not define the term "records", it is necessary to define that term. We believe that the term "records" as used in § 44–04–18, N.D.C.C., and Article XI, § 6 of the North Dakota Constitution is unambiguous. The legislative history surrounding the enactment of § 44–04–18 reveals that the Legislature intended to give the term an expansive meaning.[2] Section 44–04–18, N.D.C.C., does not concern those persons or entities not specifically included therein. *Grand Forks Herald v. Lyons*, 101 N.W.2d 543 (N.D.1960). In addition, specific statutory exceptions exist which preclude public inspection of certain records. These exceptions to the open records law are contained within the statutory provisions relating to the public body or agency in question. Government in the Sunshine: The Status of Open Meetings and Open Records Laws in North Dakota, Daniel S. Guy and Jack McDonald, 53 N.D.L.Rev. 51 § III.C (1976). Examples of these exceptions to the open records law (§ 44–04–18, N.D.C.C.)

---

been refined and the United States Supreme Court has said that a statutory classification based upon suspect criteria or which interferes with the exercise of fundamental rights requires strict scrutiny and justification by a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In addition, the Court has further refined the test in certain instances which require that the classification serve an important state interest and be substantially related to that interest. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

Knutson does not contend that the classification criteria impinge upon his fundamental rights or involve suspect criteria; therefore, the applicable measure must be the traditional one of whether or not the distinction in treatment is invidious and without a rational basis. We do not believe that the classification is without a rational basis because the Legislature has traditionally been allowed to implement reforms one step at a time, addressing itself to the phase of the problem which it deems most acute. *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). As the United States Supreme Court stated in *Carmichael v. Southern Coal Co.*, 301

U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937):

"A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

2. See Government in the Sunshine: The Status of Open Meetings and Open Records Laws in North Dakota, Daniel S. Guy and Jack McDonald, 53 N.D.L.Rev. 51 (1976). See also Senate Concurrent Resolution No. 4024, Forty-fifth Legislative Assembly, S.L. 1977, ch. 612, § 1; S.L. 1979, ch. 694.

include income tax returns § 57–38–57, N.D.C.C.; certain medical records § 15–10–17(2), N.D.C.C.; and certain reports to the Workmen's Compensation Bureau § 65–04–15, N.D.C.C.

The City is a political subdivision of the State and, as such, all of its records are public records open for inspection equally to members of the public, which includes the news media. A personnel file maintained by a personnel director of a political subdivision is a public record open to public inspection. While the City cites a number of cases in support of the proposition that thought processes, work product, preliminary data, and work sheets and notes are not records, no specific exception exists in our law which would permit such matters to be withheld from public scrutiny. We express no opinion on whether or not certain implied exceptions exist on the question of what is or is not a record within the meaning of § 44–04–18, N.D.C.C. Absent a specific exception which would preclude inspection of the contents of Knutson's personnel file, his personnel file is open to public inspection.

The determination of what constitutes a public record is resolved by the provisions of § 44–04–18, N.D.C.C. Public records are not, as the City contends, limited to those records which are required by law to be kept and maintained. The use of the term "record" implies that a document of some official import be retained by the public officer or employee in the course of his public duties. We are directed to no statutory authority which prescribes the maintenance of municipal personnel files or the material to be retained in those files; yet,

the expansive language of § 44–04–18, N.D.C.C., seems to dictate that municipal personnel files are records open to inspection by the public. Both Article XI, § 6 of the North Dakota Constitution and § 44–04–18, N.D.C.C., specify that "except as otherwise provided by law", public records are open to the public for inspection. If the City and Knutson believe that municipal personnel records are not open to public inspection, a remedy must be sought with the Legislature. Municipal personnel records are public records by virtue of § 44–04–18, N.D.C.C.

### III

■ The final issue is concerned with whether or not the disclosure of the contents of his personnel file would constitute an impermissible invasion of Knutson's right of privacy.[3] Knutson asserts that a right of informational privacy exists under both the Federal and the State Constitutions which would prevent the disclosure of the contents of his personnel file. A generalized right of privacy is not mentioned in the Federal or State Constitution; thus, if a right of informational privacy does exist it has not yet been recognized.

Recent decisions of the United States Supreme Court which have established a right of privacy have done so in cases involving governmental intrusions into matters relating to marriage, procreation, contraception, family relationships, child rearing, and education. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Loving v. Virginia*, 388 U.S. 1, 87

**3.** Whether or not the tort of invasion of privacy exists under North Dakota law has not been determined. *Volk v. Auto-Dine Corporation*, 177 N.W.2d 525 (N.D.1970). Recognition of remedies for invasion of privacy followed the publishing of an 1890 Harvard Law Review article [Warren and Brandeis, The Right to Privacy, 4 Har.L.Rev. 193 (1890)]. The tort is composed of four basic forms which include (1) appropriation of a name or picture for commercial purposes without written consent; (2) intrusion upon one's solitude or seclusion; (3) public disclosure of private information which is not necessarily defamatory; and (4) placing

a person in a false light through the coincidental use of names, fictionalization, or the misuse of names and pictures in otherwise legitimate news stories. Prosser, Torts 4th Ed. § 117 (1977); Gillmor and Barron, Cs Mass Communication Law, 2d Ed., Chapter III, § 1, p. 287 (1974). All four forms of the tort are subject to two basic defenses—consent and newsworthiness. Guarantees of Freedom of Speech and Press under the First Amendment to the United States Constitution must also be considered. *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). See also Annot., Waiver or Loss of Right of Privacy, 57 A.L.R.3d 16 (1974).

S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). The right of privacy was seen, in part, as emanating from the penumbras surrounding the express provisions of the Bill of Rights. In the "privacy" cases, the Supreme Court has protected privacy in the sense in which it confers independence in making certain kinds of important decisions, and in protecting an individual's interest in avoiding disclosure of personal matters.

The Supreme Court has recognized a narrow right of privacy for the person, home, and political association. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). However, in its most recent decision involving a claim of a right to privacy, the United States Supreme Court has limited these zones of privacy. *Whalen v. Roe,* 429 U.S. 589, 604 n. 32, 97 S.Ct. 869, 878 n. 32, 51 L.Ed.2d 64 (1977). While the Court recognized in *Whalen v. Roe, supra,* that the right of privacy embraced a general individual interest in avoiding disclosure of personal matters, the Court concluded that New York's statutory scheme for maintaining computerized records of prescriptions for certain dangerous drugs did not constitute an invasion of any liberty or right protected by the Fourteenth Amendment even though the patient identification requirement imposed by the law could have a direct effect on the reputation or independence of the patients. Thus, the protection of a person's general right to privacy—his right to be left alone by other people—is, like the protection of his property and his life, left largely to the law of the individual States. *Katz v. United States, supra.*

While the Supreme Court's decision in *Whalen v. Roe, supra,* implies that the right of privacy does include a general individual interest in avoiding disclosure of personal matters, the limit of the right in such circumstances has not been defined. Congress has enacted a statute which is based upon the assumption that a constitutional right of privacy exists. Privacy Act of 1974, P.L. 93–579, 5 U.S.C.A. § 552a. The North Dakota Legislature has not enacted similar legislation and no statutory or constitutional right of privacy (other than the protection accorded by Article I, § 8 of the North Dakota Constitution, against unreasonable searches and seizures) has as yet been recognized under the North Dakota Constitution. However, it is within our power to apply higher constitutional standards than are required of the States by the Federal Constitution. *State v. Klodt,* 298 N.W.2d 783 (N.D.1980).

For reasons stated in this opinion, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the opinion written for the court by Justice Paulson. I do so because I believe that the personnel records were kept by the City in its ordinary course of business; that the public has a right to be informed as to its public officials and employees; and that the records therefore are public records within the meaning of the pertinent statutory and constitutional provisions. By so doing I do not imply that every scrap of paper a public official or a public employee might retain in the course of his tenure with a public body is a public record. The pertinent statutory and constitutional provisions do not define the term "record." Justice Paulson in the majority opinion has concluded that the term, as used in these provisions, implies a document of some official import to be retained by a public officer or employee in the course of his public duties. I agree with that conclusion.

The North Dakota Legislature, in enacting the open-records statute and in adopting the resolution which resulted in a constitutional amendment with nearly identical language, very probably left the term "record" undefined so that it might be given a broad meaning. That reasoning may be understandable but it also vests wide discretion in the public officer. Except for records which are required by specific statute or local ordinance or policy to be retained, certain officers may determine to not retain documents which should be retained, simply because they do not wish them to be available to the public. As an example, whether or not public bodies will retain extensive personnel records following this decision may be open to question. There are few, if any, statutes that prescribe the maintenance of personnel files or identify the material that must be retained in those files if they are maintained.

If the City and Knutson believe that maintenance of personnel files is necessary but such records should not be open to public inspection, their remedy is by the legislative process. Both our statute and our constitutional provision specify that "except as otherwise provided by law" public records are open to the public for inspection. The phrase "except as otherwise provided by law" obviously implies authority in the Legislature to make certain records confidential, and there are statutes which do exactly that. Recent attempts to make certain records confidential have resulted in statements that such legislation will result in a persistent attempt in the future to close to public scrutiny even more records and therefore no such legislation should be enacted. There appears to be little doubt that the constitutional provision expresses a policy of open records, but it also expresses the policy that the Legislature has the authority to determine whether or not a specific record should be confidential.

Finally, while I agree with the majority opinion that our Constitution contains no express right of privacy, I do not read it as foreclosing in the future any and all such challenges to disclosure of certain information in records retained by public agencies, in the absence of a statute making that information confidential. As an example, it was apparently believed necessary to provide that the medical records of patients at the University of North Dakota Medical Center Rehabilitation Hospital should be kept confidential. Sec. 15–10–17(2), N.D. C.C. If no such provision existed, I would nonetheless hold that such records should be confidential, under a right of privacy if necessary, because I do not believe that a private individual who seeks medical treatment through the only such available facility in the State should, because the facility is owned and operated by the State, be forced to face the prospect of having his medical record made public as a condition of that treatment. Thus, while I agree there may be no right of privacy in a personnel record of a person employed by a public agency, I would not entirely foreclose the possibility that such a right might exist in the future with regard to personal information contained in the records of public agencies but which information does not affect the operation of that agency as a public agency.

SAND, J., concurs.