**Bruce KOBILANSKY, Appellee,**

v.

**Duane LIFFRIG, North Dakota Highway Commissioner, Appellant.**

**Civ. No. 10715.**

Supreme Court of North Dakota.

Nov. 28, 1984.

Vinje Law Firm, Bismarck, for appellee; argued by Ken R. Sorenson, Bismarck.

Myron E. Bothun, Asst. Atty. Gen., Bismarck, for appellant.

SAND, Justice.

The North Dakota Highway Commissioner (Commissioner) appealed from a judgment of the Burleigh County district court which reversed an administrative suspension of Bruce Kobilansky's (Kobilansky) driver's license.[1]

On 28 January 1984 Kobilansky was stopped while driving his car by the Bismarck Police Department and given a breathalyzer test which indicated a blood alcohol concentration of 0.14 percent. Kobilansky was then charged with driving while intoxicated.

As required by North Dakota Century Code § 39–20–03.1 the Bismarck Police Department forwarded to the Commissioner a sworn report of the breathalyzer operator specifying, inter alia, that Kobilansky was driving with a blood alcohol concentration over 0.10 percent. The Commissioner notified Kobilansky that his driver's license was to be suspended pursuant to North Dakota Century Code § 39–20–04.1 and Kobilansky requested and received a hearing.

Pursuant to NDCC § 39–20–04.1 Kobilansky's driver's license could be suspended for ninety days or for one year, if he had violated NDCC § 39–08–01 within five years, provided the Commissioner's hearing determined, inter alia, that the test to establish Kobilansky's blood alcohol concentration was properly administered and that it was 0.10 percent or greater.

The notice of hearing received by Kobilansky also contained a separate notice, with attached documents, stating:

"Attached are copies of certified copies of the Breathalyzer Operational Check List (Form 106) and the three test records relating to issues to be determined at the hearing scheduled in this matter. These documents will be submitted as evidence of facts to be determined at the hearing. No witness has been scheduled to testify on any matters contained in or pertaining to these documents."

At the hearing the breathalyzer operational check list and test records were offered as evidence. The check list identifies the various steps taken in administering a breathalyzer test and the test records show the test and actual results of the breathalyzer examination. Both documents were certified records of the Bismarck Police Department. The operator who gave Kobilansky the breathalyzer test and filled out the check list and test results was not present at the hearing and had not been subpoenaed by Kobilansky. The check list and test results were admitted into evidence over Kobilansky's objection that no foundation as to the operation of the breathalyzer test was established and no confrontation of the breathalyzer operator was had, and that the documents constituted hearsay evidence.

The Commissioner's hearing officer concluded Kobilansky was given a proper breathalyzer test and his blood alcohol concentration was above 0.10 percent. Kobilansky's driver's license was suspended for ninety days.

Kobilansky appealed the hearing officer's decision to the Burleigh County district court pursuant to NDCC § 39–20–06. The district court held the admission of the check list and test results violated due process, reversed the hearing officer's decision, and ordered Kobilansky's driving privileges reinstated. The Commissioner appealed.

■ An appeal from a district court judgment involving the suspension of a driver's license pursuant to NDCC Ch. 39–20 is governed by the Administrative Agencies Practice Act, NDCC Ch. 28–32. Accordingly, we review the record compiled before the administrative agency and not the district court's findings. *Dodds v. North Dakota State Highway Commissioner*, 354 N.W.2d 165, 168 (N.D.1984). Furthermore, our role on review is limited

1. A stipulation for dismissal was filed in a companion case, *Kleven v. Liffrig*, and an order of dismissal of that appeal has been entered.

by NDCC § 28–32–19 to the determination of several statutorily defined questions.

Kobilansky argued he was denied procedural due process and a fair hearing because the check list and test results were admitted as evidence. Specifically, Kobilansky contended that these documents were inadmissible as hearsay evidence under Rule 802, North Dakota Rules of Evidence, and that the breathalyzer operator must be present at the administrative hearing to provide the foundation for the admission of the check list and test results. The Commissioner argued that these documents were admissible as exceptions to the hearsay rule under NDREv 803(8) as records and reports of a public office and therefore the presence of the breathalyzer operator was immaterial.

■■■ The Rules of Evidence per se do not control the admission of evidence before administrative agencies such as the State Highway Department. Rule 1101(d)(3), NDREv; *Zimney v. North Dakota Crime Victims, Etc.*, 252 N.W.2d 8, 13 (N.D.1977); *Reliance Insurance Company v. Public Service Commission*, 250 N.W.2d 918, 920 (N.D.1977). Instead, administrative proceedings conducted by the Commissioner pursuant to NDCC Ch. 39–20, the implied consent statutes, are governed by the provisions of NDCC Ch. 28–32, *Agnew v. Hjelle*, 216 N.W.2d 291, 294 (N.D.1974), and NDCC § 28–32–06 delineates what evidence is admissible in administrative hearings:

"The admissibility of evidence in any proceeding before an administrative agency shall be determined, insofar as circumstances will permit, in accordance with the practice in the district court. An administrative agency, or any person conducting an investigation or hearing for it, may waive the usual common-law or statutory rules of evidence if such waiver is necessary to ascertain the substantial rights of all the parties to the proceeding, but only evidence of probative value shall be accepted. All objections offered to evidence shall be noted in the record of the proceeding. No in-

formation or evidence except such as shall have been offered and made a part of the official record of the hearing shall be considered by the administrative agency, except as otherwise provided in this chapter."

■■■ Thus, the only specific limitation to the admission of evidence in administrative hearings is that it must be probative. *Williams Electric Cooperative, Inc. v. Montana Dakota Utilities Co.*, 79 N.W.2d 508, 525 (N.D.1956). In addition, the rules governing admissibility must also grant procedural due process whenever deprivation of life, liberty, or property is or may be involved. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); U.S. Const.Amend. 14; N.D. Const. Art. I, § 12.

■■ A driver's license is a protectable property interest to which the guarantee of procedural due process applies. *Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 3515, 77 L.Ed.2d 1267 (1983); *Mackley v. Montrym*, 443 U.S. 1, 12, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979); *Dickson v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); also see *State v. Sinner*, 207 N.W.2d 495 (N.D.1973).

This raised the following issues: (a) Did the rules governing the admission of evidence in the administrative hearing to suspend Kobilansky's driver's license violate his constitutional right to due process, (b) was the decision in accordance with law, and (c) did he receive a fair hearing? See NDCC § 28–32–19(1), (2), and (4).

■■ The minimal due process before an administrative board is not synonymous with the minimal requirements of due process in a court of law. *First American Bank and Trust Company v. Ellwein*, 221 N.W.2d 509, 517 (N.D.1974), *cert. denied* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301, *rehearing denied* 419 U.S. 1117, 95 S.Ct. 798, 42 L.Ed.2d 816 (1975).

The strictness of the rules of evidence is not applicable to the unique characteristics of administrative hearings and their need generally for simple, informal, and direct

adjudication. *Opp Cotton Mills v. Administrator of W.H.D., Etc.*, 312 U.S. 126, 135, 61 S.Ct. 524, 537, 81 L.Ed. 624 (1941); see also *Meadow Fresh Farms, Inc. v. Sandstrom*, 333 N.W.2d 780, 784 (N.D.1983); 4 Mezines, Stein, Gruff, *Administrative Law*, § 22.01, et seq. (1984).

■ Thus, while Kobilansky cannot demand the due process followed in courts, he was entitled to procedural fairness in his administrative hearing. The United States Supreme Court has stated that the question of what process is due in an administrative context should be resolved by consideration of the following three factors:

> " 'first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.' " *Mackey v. Montrym*, 443 U.S. 1, 12, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979) quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ The initial step in the *Mackey* paradigm is identification of the nature and weight of the private interest affected by the official action challenged. Here, as in *Mackey*, the private interest involved is Kobilansky's license to drive a car. The loss of driving privileges is not insubstantial and may entail economic hardship and personal inconvenience. Furthermore, Kobilansky cannot be retroactively compensated or made whole if his suspension is later vacated.[2] Cf. *Buechler v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 858 (N.D.1974) (retroactive payment of workmen's compensation benefits); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits); *Mathews v. Eldridge, supra* (social security payments). Thus, Kobilansky's private interests cannot be considered insignificant.

The second step outlined in *Mackey* requires consideration of the likelihood of an erroneous deprivation of private interests involved as a consequence of the procedures used. *Mackey, supra*, 443 U.S. at 13, 99 S.Ct. at 2618. This inquiry necessitates an assessment of the relative reliability of the Commissioner's administrative hearing procedures and the alternative procedure sought by Kobilansky.

Kobilansky argued the introduction of the check list and test results, without the in-person testimony of the breathalyzer operator as to the procedures and circumstances surrounding the particular test, failed to establish the reliability of the test results. Kobilansky contended the Commissioner had the burden to prove he was properly tested and his blood alcohol level was 0.10 percent or greater. To meet this burden Kobilansky claimed the Commissioner must be required to secure the in-person testimony of the breathalyzer operator at the administrative hearing. We do not agree.

Pursuant to NDCC § 39–20–05(2) the scope of an administrative hearing to suspend a driver's license for driving with a blood alcohol concentration of 0.10 percent or greater is limited to four issues, only two of which are relevant here: (1) Was the person properly tested to determine blood alcohol concentration, and (2) based upon review of the test procedures and results did the person have a blood alcohol concentration of at least 0.10 percent by weight?

■ Section 39–20–05(4), NDCC, in part provides:

> "At a hearing under this section, the *regularly kept records* of the commissioner may be introduced. *Those records establish prima facie their con-*

---

**2.** Kobilansky was not eligible for a temporary restricted license until 30 days of his suspension had been served, NDCC § 39–06.1–11(2), and the suspension could not be stayed by a court or the Commissioner pending judicial review, § 39–20–06.

*tents without further foundation....* "
[Emphasis supplied.]

Pursuant to NDCC § 39–20–03.1(3) the law enforcement officer must forward to the Highway Commissioner the sworn report showing that the person was properly tested for blood alcohol concentration and in addition the breathalyzer operator must submit the test results to the Commissioner. Once these documents are in the Commissioner's possession they become "regularly kept records" of the Commissioner and are prima facie evidence of their contents without further foundation. Therefore, according to §§ 39–20–05(4) and 39–20–03.1(3) the check list alone constituted prima facie evidence that Kobilansky was properly tested and similarly the test results alone demonstrated his blood alcohol concentration was 0.14 percent by weight. Logically these statutes permit the introduction of the documents without the presence or testimony of the breathalyzer operator.[3]

However, Kobilansky argued that these statutes denied him a fair hearing in allowing the admission of the documents, although hearsay, and as a result this improperly shifted to him the burden of proof by forcing him to demonstrate he was *not* given a proper breathalyzer test. Kobilansky contended the burden should be upon the Commissioner to prove he was properly tested.

 The fact that the documents may be hearsay is not alone determinative of their admissibility. Generally, certain hearsay evidence is admissible in administrative proceedings. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Only if the evidence is not probative, NDCC § 28–32–06, or its introduction is unfair, *Mathews v. Eldridge, supra,* should its admission be denied. It is not the hearsay evidence per se that is

significant in determining if such evidence is admissible; but rather its probative value, and the reliability and fairness of its use that are dispositive. *Calhoun v. Bailar,* 626 F.2d 145, 149, (9 Cir.1980), *cert. denied* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981).

 Even though the rules of evidence are not controlling in administrative hearings, NDREv 1101(d)(3), their standards provide helpful guidance in determining if the admission of the check list and test results were fair. *Calhoun, supra* at 149. After reviewing NDREv 803(8), Hearsay Exceptions, as a reference, we conclude the documents are not excluded by the hearsay rules and their use in Kobilansky's hearing was not unfair. Rule 803(8) reads:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (i) the activities of the office or agency, or (ii) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (iii) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness. However, factual findings may not be admitted under this exception unless the proponent of them furnishes to a party against whom they are now offered a copy thereof, or of so much thereof as relates to the controversy, sufficiently in advance of its offer in evidence to provide the adverse party with a fair opportunity to prepare to meet them. The adverse party may cross-examine under oath any person making the report or

---

**3.** NDCC § 39–20–07 further states that upon the trial of any civil proceeding arising out of acts alleged to have been committed by a person driving while intoxicated, the evidence of blood alcohol concentration is admissible and the results of the chemical analysis *must be received in evidence* when it is shown: (1) the samples

were properly obtained, (2) the test was fairly administered, (3) the test is shown to have been performed according to the methods and devices approved by the state toxicologist, and (4) by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. .

factual findings or any person furnishing information contained therein, but the lack of availability of that testimony does not affect admissibility of the report or factual findings unless, in the opinion of the court, the adverse party is prejudiced unfairly thereby."

■ The check list and test results are admissible under Rule 803(8)(ii) because they are records or reports of a public agency, the State Highway Department [see NDCC § 44–04–18; N.D. Const. Art. XI, § 6; *City of Grand Forks v. Grand Forks Herald, Inc.,* 307 N.W.2d 572, 577 (N.D.1981)], setting forth matters observed pursuant to duty imposed by law as to which there was a duty to report, see NDCC § 39–20–03.1(3), and the administrative hearing was civil and not criminal in nature, *Asbridge v. North Dakota State Highway Commissioner,* 291 N.W.2d 739, 750 (N.D.1980). The documents are also admissible under NDREv 803(8)(iii) because, again, this was a civil hearing, *Asbridge, supra,* the check list and test were factual findings [see generally McCormick, Evidence, § 890 (3 ed. 1984); 4 Weinstein, Evidence, § 803(8)[03] (1984)]; *Baker v. Elcona Homes Corp.,* 588 F.2d 551 (6 Cir. 1978) *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979); resulting from an investigation made pursuant to authority granted by law, NDCC § 39–20–03.1(3), and finally, that the source of the documents or other circumstances do not indicate a lack of trustworthiness. See *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 785, 59 N.W.2d 849, 866 (1953); *State v. Hanson,* 345 N.W.2d 845, 850 (N.D.1984); NDCC § 31–11–03(15) and (32); *Complaint of Paducah Towing Co., Inc.,* 692 F.2d 412, 421 (6 Cir.1982).

Additionally, the documents were admissible under the remaining language of NDREv 803(8):

"* * * However, factual findings may not be admitted under this exception unless the proponent of them furnishes to a party against whom they are now offered a copy thereof, or of so much thereof as relates to the controversy, sufficiently in advance of its offer in evidence to provide the adverse party with a fair opportunity to prepare to meet them. The adverse party may cross-examine under oath any person making the report or factual findings or any person furnishing information contained therein, but the lack of availability of that testimony does not affect admissibility of the report or factual findings unless, in the opinion of the court, the adverse party is prejudiced unfairly thereby."

This language is derived from former NDCC §§ 31–09–11 and –12 which were adopted from the Uniform Official Reports as Evidence Act. This uniform act was adopted by North Dakota in 1937 for the express purpose of making written reports of state officials on matters within their duties admissible as evidence.

According to this language of NDREv 803(8) factual findings, such as the check list and test results, are not admissible unless the Commissioner furnished Kobilansky copies of these documents sufficiently in advance of the hearing to provide him a fair opportunity to meet them. Five days prior to the hearing the Commissioner mailed to Kobilansky certified copies of the check list and test results along with this notice:

"These documents will be submitted as evidence of facts to be determined at the hearing. No witness has been scheduled to testify on any matter contained in or pertaining to these documents."

■ Kobilansky failed to complain or request additional time to prepare for the hearing. Kobilansky also did not subpoena or depose the breathalyzer operator or make use of any other methods of discovery. Consequently, the absence at the hearing of the breathalyzer operator did not affect the admissibility of the documents unless Kobilansky was "prejudiced unfairly thereby." Legal logic compels the conclusion that if those documents are admissible in a court of law they certainly are admissible at an administrative hearing.

Kobilansky also claimed he was "prejudiced unfairly" because he was forced to procure the breathalyzer operator's attendance at his hearing if he wished to cross-examine him. Kobilansky contended the Commissioner had the burden to prove by a preponderance of the evidence that, inter alia, he was properly tested and had a blood alcohol concentration of 0.10 percent or greater. See NDCC § 39–20–05(2). Consequently, Kobilansky claimed that in forcing him to procure the breathalyzer operator's attendance the Commissioner improperly shifted the burden of proof to him to prove he was not properly tested.

 The customary common law rule that the moving party has the burden of proof is generally observed in administrative hearings. McCormick, Evidence, *supra* § 357. Here, the Commissioner, as the complainant [see NDCC §§ 39–20–05 and 28–32–05(1)] is the moving party and had the burden to prove the four issues delineated in § 39–20–05(2). The Commissioner has met this burden. The Legislature has authorized the admission of certain certified documents, i.e., the check list and test results, without further foundation as prima facie evidence of their contents. NDCC §§ 39–20–05(4) and 39–20–07; see generally *Justen Bros. v. Christgau*, 7 N.W.2d 501, 507 (Minn.1943); 73A C.J.S.2d, *Public Administrative Law and Procedure*, § 127 (1983). These statutes, in effect, merely establish the check list and test results are admissible evidence which, if unexplained or uncontradicted by Kobilansky, create a rebuttable presumption of the accuracy of their contents. Thus, the Commissioner is not required to have the breathalyzer operator in attendance at the hearing. If Kobilansky deemed it important to cross-examine the operator he could have subpoenaed him without cost. NDCC § 39–20–07(9); *Starr v. Morsette*, 236 N.W.2d 183, 187 (N.D.1975).

 The key to the admissibility of the check list and test results under NDREv 803(8) is that Kobilansky had notice that the documents would be introduced without the presence of the breathalyzer operator. Furthermore, Kobilansky had the opportunity, without cost, to subpoena the breathalyzer operator, but failed to do so. Kobilansky also had the right but failed to depose the breathalyzer operator or use other methods of discovery prior to the hearing. Consequently, he cannot justifiably claim he was unfairly treated or surprised that the breathalyzer operator was not at the hearing. See *Cooley v. Texas Department of Public Safety*, 348 S.W.2d 267 (Tex.Ct.App.1961); *Roberts v. State*, 301 S.W.2d 154 (Tex.Ct.Crim.App. 1957). The purpose of the last two sentences of NDREv 803(8) is to allow reliable and accurate reports, including factual findings, to be introduced without the necessity of calling the person who wrote the report as a witness.[4] See generally 28 U.S.C. § 1732 and *United States v. Diez*,

---

4. The discussion of the uniform act, the precursor to the last two sentences of NDREv 803(8), by members of the commission at the National Conference of Commissioners on 17–22 August 1936 sheds light on the intent and purpose of this law:

"Mr. Young: Does this Act make this report conclusive evidence of the facts?

"Vice-President Rose: No, it is only evidence.

"Mr. Bias: Unfortunately, I was not present when this Act was being considered. I would like to ask the Chairman of the Committee how the adverse party is going to cross-examine when, ordinarily, it is a published report and the one who makes it may be hundreds of miles away from the place of trial. How are you going to cross-examine the man who makes the report unless you summon that man and put him on the witness stand? I wish you would make that clear to me, Section 3, please.

"Mr. Wigmore: I should like to call attention to Section 2, which provides that a copy of the report shall be given a reasonable time before trial. This is the way he can cross-examine on it.

"Mr. Bias: That doesn't produce the witness.

"Vice-President Rose: He can take his deposition.

"Mr. Bias: In Cross-examination?

"Vice-President Rose: Yes, you can cross-examine by interrogatories." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty-Sixth Annual Conference, p. 178.

515 F.2d 892, 900 (5 Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641 (1976); *United States v. Parker,* 491 F.2d 517, 521 (8 Cir.1973) for treatment of a similar federal statute which holds the presence of the author of the official record is immaterial.

■ We conclude the certified copies of the check list and test results were admissible without further foundation or the presence of the breathalyzer operator and that this did not violate Kobilansky's constitutional right to due process. *Mackey, supra,* 443 U.S. at 17, 99 S.Ct. at 2620.

The final stage in the *Mackey* analysis is to identify the governmental function involved and to weigh and balance both the state interests served by the administrative procedures used as well as the administrative and fiscal burden, if any, that would result from the substitute procedures sought by Kobilansky. *Mackey, supra,* 443 U.S. at 18, 99 S.Ct. at 2620.

■ The obvious state interest served by the implied consent statute is to deprive the drunk driver the privilege of continuing to drive for the public safety. See *State v. Sinner,* 207 N.W.2d 495, 499 (N.D.1973). We may also take judicial notice of the carnage caused by the drunk driver. See 1983 North Dakota Vehicular Accident Facts published by the North Dakota State Highway Department, page 14.

■ The state's interest in public safety is substantially served by the Commissioner's suspension procedures of those who drive while intoxicated. The administrative hearing provided Kobilansky with notice and opportunity to fairly contest the suspension of his driver's license. Kobilansky proposed that the Commissioner be required to secure the breathalyzer operator's attendance at the suspension hearing to provide a foundation for the introduction of the check list and test results into evidence. However, because of the current statutory provisions this would require legislative action. The physical presence of the breathalyzer operator at the hearing would add little to the probative value of

the check list and test results and would not likely enhance their reliability. See *Burkhart v. Department of Motor Vehicles,* 124 Cal.App.3d 99, 177 Cal.Rptr. 175 (Cal.1981). If Kobilansky deemed the breathalyzer operator's presence crucial he could have subpoenaed him without cost. We conclude that the state's compelling interest in highway safety justifies the administrative suspension procedures used by the Commissioner.

Accordingly, the judgment of the district court is reversed and the decision of the Commissioner's hearing officer is reinstated.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and GIERKE, JJ., concur.