Timothy Allan **FROST**, Appellee,

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellant.**

**Civ. No. 910369.**

Supreme Court of North Dakota.

June 1, 1992.

---

Thomas M. Tuntland (argued), Mandan, for appellee.

Elaine Ayers (argued), Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for appellant.

MESCHKE, Justice.

The North Dakota Department of Transportation appeals from a district court judgment reversing the Department's decision to suspend Timothy Allen Frost's driving privileges. The court held that the Intoxilyzer test record was not satisfactorily authenticated. We hold that the test record was sufficiently identified, and we reverse the district court judgment and reinstate the Department action.

Sgt. Keith Witt of the Bismarck Police Department arrested Frost for driving under the influence. At the police station, Frost consented to an Intoxilyzer breath test. The test was given by Officer Scott Meyers, a certified chemical test operator. The test showed a blood alcohol concentration of 0.18 percent.

At the administrative hearing, a copy of the "Intoxilyzer Test Record and Checklist" signed by Meyers was offered for evidence from the Department's records. The back of the copy of the Intoxilyzer checklist and test record had a stamped certification that said:

> The undersigned hereby certifies that the information contained on the documents herein is a true and correct printed record of the information maintained in the files of the Bismarck Police Depart-

ment relative to the individual named herein. Further, the undersigned is charged with the care and custody of said information.

Beneath this certification, the dated signature of Barb Hollan–Simonson was affixed. Below that, the signature and seal of notary public Jean Leuwer, along with the date her commission expires, was placed, as an apparent (though unstated) acknowledgement of Hollan–Simonson's signature.

Frost objected to this copy of the checklist and test record because it was not certified by, or forwarded to the Department by, a certified breath test operator as allegedly required by NDCC 39–20–03.1(3) and 39–20–05(4). Witt testified that he did not personally send any documents to the Department, but gave them to the records unit at the police station for transmission to the Department. Meyers, the operator who gave the test and who signed the original test record, did not testify. It is clear that Meyers did not certify the copy of the test record or personally forward the copy of it to the Department.

The hearing officer overruled Frost's objection. The hearing officer determined that "the statute was followed," admitted the test record into evidence, and concluded that the test was fairly administered and that Frost had more than 0.10 percent blood alcohol content by weight. Frost's driving privileges were suspended for 364 days.

On appeal to the district court, Frost argued that NDCC 39–20–05(4) directed that the copy of the checklist and test record must be certified by and submitted to the Department by Meyers, the certified breath test operator, in order to be used at the administrative hearing. Frost also contended that the copy of the checklist and test record is inadmissible under NDREv 902(2) and (4) because there is no additional certification under seal that Hollan–Simonson had any official capacity at the police station or that her signature was genuine. The district court agreed, concluding that "the record was not properly certified either by a chemical test operator or by a keeper of the records in accordance with the North Dakota Rules of Evidence and the statutes applicable to the record...." The court reversed the Department's decision suspending Frost's license. The Department appeals.

■ An Intoxilyzer test result is admissible in an administrative proceeding when it is shown that the test was "fairly administered." NDCC 39–20–07. The statute does not require testimony of the state toxicologist or of the Intoxilyzer operator to show fair administration of the test. Rather, the purpose of 39–20–07 is "to ease the requirements for admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered." *Salter v. Hjelle*, 415 N.W.2d 801, 803 (N.D.1987). Thus, documents, including certified copies of the operational checklist, of the approved methods filed by the state toxicologist with the clerk of district court, and of records showing that the device was approved and that the operator was qualified, are admissible to prove fair administration of the test. *Brandt v. N.D. State Highway Commissioner*, 409 N.W.2d 645, 646–647 (N.D. 1987); *State v. Schneider*, 270 N.W.2d 787, 791 (N.D.1978). The statutory scheme authorizes the use of documentary evidence to expedite and simplify the procedure.

■ Generally, before documentary evidence is admissible it must be authenticated. *R & D Amusement Corp. v. Christianson*, 392 N.W.2d 385, 386 (N.D.1986). Authentication is simply identification. Black's Law Dictionary, p. 671 (5th ed. 1978). Identification "as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." NDREv 901(a). Evidence that a purported public record is from the public office where items of that nature are kept, and methods of identification authorized by statute conform with Rule 901(a). NDREv 901(b)(7) and (10). Additionally, extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to signatures, documents, or other matters declared by stat-

ute to be presumptively or prima facie genuine or authentic. NDREv 902(10).

The purpose and concept of self-authentication rests upon the proposition that documents in which the risk of falsification is slight should be tendered and accepted as evidence of what they purport to be without the prior testimony of an authenticating witness. This "presumptive authenticity" in no way precludes any evidentiary challenge of the genuineness of the offered writing, but simply serves to obviate the necessity of preliminary authentication by the proponent to secure admission.

*State v. Moore*, 286 N.W.2d 274, 282 (N.D. 1979) (Citation omitted). While use of self-authenticated documents expedites a trial or hearing, that does not foreclose other evidence to discredit or refute the authenticity of a particular document.

For an administrative hearing on a license suspension, the Legislature has sought to maximize the use of documentary evidence to simplify and expedite those proceedings, while preserving a driver's right to dispute the fair administration of blood tests.

*At a hearing under this section, the regularly kept records of the commissioner may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, any copy of a certified copy of an analytical report of a blood, urine, or saliva sample received by the commissioner from the office of the state toxicologist or a law enforcement officer, a certified copy of the checklist and test records received by the commissioner from a certified breath test operator, and any copy of a certified copy of a certificate of the office of the state toxicologist relating to approved methods, devices, operators, materials, and checklists used for testing for blood alcohol concentration received by the commissioner from the office of the state toxicologist or the clerk of district court, are regularly kept records of the commissioner.*

NDCC 39–20–05(4) [Emphasis supplied]. Thus, the statute authorizes the use of a self-authenticated copy of the checklist and test record received by the Department from a "certified breath test operator." The question here is who must certify the test record forwarded to the Department.

We reject Frost's assertion that, to be admissible under NDCC 39–20–05(4), the copy of the checklist and test record must be certified by the certified breath test operator. Although the statute directs that the copy of the checklist and test record be certified, the statute does not designate who must certify the copy. It has long been the law in this state that an official record may be proved "by the original or by a copy, certified by the legal keeper thereof." NDCC 31–09–10(5). 5 Weinstein's Evidence, ¶ 901(b)(7)[01], p. 901–122, explains:

Where the person who submits the record is also the keeper of the record, admissibility is not affected by his lack of knowledge of the contents. Proof of proper custody does not depend so much on the familiarity of office personnel with the material in question as with the authority of the office in which the material is found. Persons who keep records in a public office need not be able to authenticate the material by their personal knowledge if proper custody is shown.

Certification by the custodian of a public record is sufficient.

The requirement that the copy be received by the commissioner "from a certified breath test operator" refers to the qualifications of the operator who administers the test; the requirement does not refer to who certifies the copy. This construction harmonizes the statute with the requirements of NDCC 39–20–07(5). The results of the test would not be admissible under 39–20–07(5) if the operator was not certified.

Only the certificate as to custody and correctness by "the legal keeper thereof" is required. Again, 5 Weinstein's Evidence, ¶ 902(4)[01], p. 902–25 to –26, explains:

Rule 902(4) requires no additional certification to the fact of custody or to the custodian's authority. The purported custodian's signature under a statement that he has custody of the original and that the copy is correct, whether or not accompanied by a seal, suffices to assure the accuracy of the copy as a substitute for the original. The authenticity of the original is guaranteed by a certificate complying with Rule 902, paragraphs 1, 2 or 3.

The rule is silent as to what the custodian's certificate should contain. Any reasonable statement implying custody and correctness should suffice....

As applied to domestic records, the phrase "other person authorized to make certification" applies to deputy custodians or others in the office of the custodian who are authorized to make copies of the records in their keeping. His authority should be assumed on the basis of his certification alone.

Another statute confirms this explanation: *Form and contents of certificate for certifying copies to be used as evidence.*—Whenever a copy of a writing is certified for the purpose of evidence, the certificate must state in substance that the copy is a correct copy of the original, or of a specified part thereof, as the case may be. The certificate must be under the official seal of the certifying officer, if there is any, or if such officer is a clerk of a court having a seal, under the seal of such court.

NDCC 31–04–10. The custodian of the files of the Bismarck Police Department certified the correctness of this copy.

We also reject Frost's assertion that, under NDCC 39–20–05(4) and 39–20–03.1(3),[1] the certified breath test operator must be the person who personally forwards or transmits the checklist and test results to the Department. We construe a statute to avoid a ludicrous result. *State v. Larson,* 479 N.W.2d 472, 474 (N.D.1992). Frost's construction, if carried to its logical ends, would forbid a certified breath test operator from mailing a certified copy to the Department because the copy would ultimately be forwarded by the postal service. The checklist and test record originated with Meyers, the operator. He signed it. We believe the challenged document was received from and forwarded by Meyers, within the meaning of the statutes, even though others at the police station assisted in its care, custody, and forwarding.

It is undisputed that Meyers, the person who gave the test to Frost, is a certified breath test operator. A copy of the checklist and test record was certified by Barb Hollan–Simonson, who certified that she "is charged with the care and custody" of those records for the Bismarck Police Department. Although this copy may not be admissible under NDREv 902(2) or 902(4) for lack of an additional authentication that Hollan–Simonson had the official capacity of custodian of the records and that her signature was genuine,[2] NDCC 39–20–05(4)

1. NDCC 39–20–03.1(3) provides:
 The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the commissioner a certified written report in the form required by the commissioner and the person's operator's license taken under subsection 1 or 2. If the person was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the person was lawfully arrested, that the person was tested for blood alcohol concentration under this chapter, and that the results of the test show that the person had a blood alcohol concentration of at least ten one-hundredths

 of one percent by weight. In addition to the operator's license and report, *the law enforcement officer shall forward to the commissioner a certified copy of the operational checklist and test records of a breath test* and a copy of the certified copy of the analytical report for a blood, saliva, or urine test for all tests administered at the direction of the officer. [Emphasis supplied.]

2. Alternatively, it is arguable that the copy of the checklist and test record is inadmissible under NDREv 902(2) and (4), because the original document contains no certification under seal of Meyers's official capacity or of his signature. *See In re Leifheit,* 53 B.R. 271, 273–274 (S.D.Ohio 1985). Because we do not rely on NDREv 902(2) or (4), we need not decide the

does not express the dual authentication requirement found in the Rule. *See* NDREv 902(10). *Cf. Darling v. Purcell,* 13 N.D. 288, 100 N.W. 726, 728 (1904) ["Where the statute authorizes an officer to make a certificate, and does not expressly require the affixing of a seal, it is not necessary, and the absence of the seal has no effect."] *See also* NDCC 47–19–14.6 on short forms of acknowledgement: "The authorization of the forms provided in this section does not preclude the use of other forms." We conclude that the requirements of NDCC 39–20–05(4) were met in this case, and that this certified checklist and test record became "regularly kept records of the commissioner."

 The checklist and test record are hearsay as defined by NDREv 801(c). However, because they are "regularly kept records of the commissioner" pursuant to NDCC 39–20–05(4), they are subject to admission under the public records and reports exception to the hearsay rule. *See* NDREv 803(8); *Berger v. State Highway Commissioner,* 394 N.W.2d 678, 688 (N.D. 1986); *Kobilansky v. Liffrig,* 358 N.W.2d 781, 789 (N.D.1984). The record shows that, several days prior to the administrative hearing, the Department mailed to Frost copies of the Intoxilyzer checklist and test record along with other documents to be offered in evidence. The trustworthiness of this evidence was not seriously disputed by any discrediting evidence. Moreover, Frost has not demonstrated any unfair prejudice from admission of the test results. *See Kobilansky.* We conclude that the Intoxilyzer checklist and test record were properly admitted in evidence at the administrative hearing.

Accordingly, we reverse the judgment of the district court and reinstate the decision of the Department suspending Frost's driving privileges.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and HUNKE, District Judge, concur.

question in this case. Rather, we rely on

HUNKE, D.J., sitting as a member of the Court to fill the vacancy created by the resignation of GIERKE, J. JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate in this decision.

NDREv 902(10) and NDCC 31–04–10.