In the Matter of the Suspension of
the Driving Privileges of Travis
Scott Peterson.

Travis Scott PETERSON, Appellant,

v.

NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Appellee.

In the Matter of the Suspension of the
Driving Privileges of Bradley
Michael Jacobson.

Bradley Michael JACOBSON, Appellant,

v.

NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Appellee.

In the Matter of the Suspension of the
Driving Privileges of Tamara Jean
Johnson.

Tamara Jean JOHNSON, Appellant,

v.

NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Appellee.

Civ. Nos. 930366, 930407 and 940031.

Supreme Court of North Dakota.

June 28, 1994.

Mark R. Fraase, of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for appellants.

Jean R. Mullen, Asst. Atty. Gen., Attorney General's Office, Bismarck, for appellee.

VANDEWALLE, Chief Justice.

Travis Peterson, Bradley Jacobson, and Tamara Johnson appeal from district court judgments affirming orders suspending their driving privileges. We reverse and remand.

Peterson and Jacobson's driver's licenses were suspended pursuant to Section 39–06–40(1) and (7), N.D.C.C., which authorizes the Director[1] of the Department of Transportation [DOT] to revoke a driver's license for up to six months if the person displays or has in his possession an altered driver's license. The altered licenses and unauthenticated copies of a "LAW ENFORCEMENT INITIAL COMPLAINT REPORT" and a supplemental police report from Moorhead, Minnesota, were the only evidence offered at the administrative hearing to support those charges. These documents show that Peterson and Jacobson allegedly attempted to enter a bar in Minnesota using their altered North Dakota driver's licenses.

Johnson's driver's license was suspended pursuant to Section 39–06–40(3) and (7), N.D.C.C., for displaying another person's driver's license. Unauthenticated copies of a "LAW ENFORCEMENT INITIAL COMPLAINT REPORT" and a supplemental police report from Moorhead, Minnesota, were the only evidence offered at the administrative hearing to support the charge. These documents show that Johnson allegedly attempted to enter a Minnesota bar using another person's driver's license.

The complaint reports admitted in this case are forms, filled out primarily on a typewriter. The arresting officer, who presumably filled out the forms, did not sign them, although a supervisor did initial them. There is no seal indicating that they are official documents; in fact, there is no indication anywhere on the complaint reports that they are from the Moorhead police depart-

---

1. Although the statute says "Commissioner," Section 39–01–01(8), N.D.C.C., clarifies that "Commissioner" means the Director of the Department of Transportation.

ment. The separate "supplements" to the complaint reports are also not signed by anyone, and bear no seal, certification, or letterhead of any Minnesota law enforcement or licensing agency. The envelopes in which the documents were forwarded are not in the record, so no return address is available. The notices the licensees received indicated only that the documents were received "from Minnesota." Counsel for DOT candidly admitted at oral argument that she does not know where the documents came from, although she speculated that they were sent by either the Moorhead police department or the Minnesota driver's licensing agency.

At their respective administrative hearings, Peterson, Jacobson, and Johnson objected to admission of the unauthenticated copies of the complaints and supplemental police reports. In each case the hearing officer admitted the documents and ordered suspension of driving privileges for sixty days. The district court affirmed the suspensions, and Peterson, Jacobson, and Johnson then appealed to this court. The cases have been consolidated on appeal.

◼ An appeal from a district court judgment involving a license suspension is governed by Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act. *Holler v. North Dakota Department of Transportation Director*, 470 N.W.2d 616 (N.D. 1991). We review the decision of the agency, not that of the district court, and examine the record compiled before the agency, not the findings of the district court. *Maher v. North Dakota Department of Transporta-*

*tion*, 510 N.W.2d 601 (N.D.1994). Our review is essentially limited to: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Bryl v. Backes*, 477 N.W.2d 809 (N.D.1991).

DOT seeks to suspend these drivers' licenses based upon Section 39–06–40(7), N.D.C.C., which provides that "[t]he commissioner upon receiving a record of conviction or other satisfactory evidence of the violation of this section shall immediately revoke the person's operator's license, driving privileges, permit, or non-driver photo identification card." DOT concedes that there is no record evidence that these licensees were convicted of any of the offenses enumerated in Section 39–06–40, N.D.C.C.,[2] but argues that there was "other satisfactory evidence" of violations to support suspension of their driver's licenses. DOT asserts that the unauthenticated, unsigned, and uncertified copies of the Minnesota police reports constitute sufficient "other satisfactory evidence."

DOT concedes that, under the 1991 amendments to Section 28–32–06(1), N.D.C.C.,[3] the North Dakota Rules of Evidence govern these license suspension proceedings. DOT argues that the Minnesota police reports, although admittedly hearsay, are admissible under Rule 803(8)(iii), N.D.R.Evid.:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \*     \*     \*     \*     \*     \*
>
> *Authority to suspend licenses.* The director may suspend the license of an operator, after hearing, upon proof by a fair preponderance of the evidence, that any of the following apply to the licensee:
>
> \*     \*     \*     \*     \*     \*
>
> "3. Unlawful or fraudulent use of an operator's license."

---

**2.** The record on appeal does not show the ultimate disposition of the criminal charges in Minnesota. We were informed at oral argument that the Minnesota charges against Peterson and Jacobson for possession of an altered driver's license, and the Minnesota charge against Johnson for displaying a borrowed driver's license, were dismissed.

Because we conclude that the hearing officer erred in admitting the copies of police reports, we need not consider the licensees' assertion that conduct occurring in Minnesota cannot constitute a "violation of this section" under Section 39–06–40(7), N.D.C.C. We express no opinion on that issue.

Neither party cited, nor did DOT base its order of suspension upon, Section 39–06–32(3), N.D.C.C., which provides:

**3.** Although prior to 1991 administrative proceedings were not governed by the North Dakota Rules of Evidence, recent statutory amendments make it clear that the Rules of Evidence are to be applied unless there has been an express, case-specific waiver. See Section 28–32–06(1), N.D.C.C., as amended by 1991 Sess.Laws ch. 342, § 7; *Madison v. North Dakota Department of Transportation*, 503 N.W.2d 243 (N.D.1993).

*"(8) Public Records and Reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (iii) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

▉ The proponent of hearsay evidence bears the burden of establishing that the statement qualifies under one of the recognized exceptions in Rules 803 and 804, N.D.R.Evid. *Staiger v. Gaarder,* 258 N.W.2d 641 (N.D.1977). When a written statement is offered that contains hearsay, part of the factual foundation required is authentication. We discussed authentication of documents in the context of a driver's license suspension in *Frost v. North Dakota Department of Transportation,* 487 N.W.2d 6, 8 (N.D.1992):

"Generally, before documentary evidence is admissible it must be authenticated. *R & D Amusement Corp. v. Christianson,* 392 N.W.2d 385, 386 (N.D.1986). Authentication is simply identification. Black's Law Dictionary, p. 671 (5th ed. 1978). Identification 'as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' NDREv 901(a)."

DOT argues that the copies of the Minnesota police records were self-authenticating pursuant to Section 39–06–33(2), N.D.C.C., which provides in pertinent part:

"Any hearing conducted under this section and any appeal from the decision of the hearing must be conducted under rules adopted by the director.... At the hearing, the regularly kept records of the director may be introduced and are prima facie evidence of their content without further foundation."

The copies of the Minnesota police reports were certified by the custodian of the records *in North Dakota* as true and correct copies of the documents on file with the North Dakota Driver's License and Traffic Safety Division. The relevant question is whether these copies of Minnesota police records constitute "regularly kept records of the director." DOT's position is apparently that any document placed in a driver's file becomes a "regularly kept record."

The phrase "regularly kept records of the director" is not statutorily defined. Although it is not our intent to limit the records encompassed therein to those specifically delineated by statute [cf. *City of Grand Forks v. Grand Forks Herald, Inc.,* 307 N.W.2d 572 (N.D.1981) (term "public records" open to inspection under Section 44–04–18, N.D.C.C., is to be given an expansive meaning, and is not limited to those records required by law to be kept)], we note that several statutes do provide examples of documents that are specifically included within the statutory designation. In four separate statutes governing use of chemical test results to determine intoxication, copies of *certified copies* of various documents are declared to be "regularly kept records of the director." See Section 39–20–05(4), N.D.C.C. (test for intoxication of drivers); Section 39–06.2–10.6(4), N.D.C.C. (test for intoxication of drivers of commercial vehicles); Section 20.1–15–08(5) (test for intoxication of hunters); Section 20.1–13.1–08(4), N.D.C.C. (test for intoxication of boat operators). Section 39–20–05(4), N.D.C.C., is illustrative:

"At a hearing under this section, the regularly kept records of the director may be introduced. Those records establish prima facie their contents without further foundation. For purposes of this chapter, any copy of a certified copy of an analytical report of a blood, urine, or saliva sample received by the director from the state toxicologist or a law enforcement officer, a certified copy of the checklist and test records received by the director from a certified breath test operator, and any copy of a certified copy of a certificate of the state toxicologist relating to approved methods, devices, operators, materials, and checklists used for testing for alcohol concentration received by the director from the state toxicologist or the clerk of district court, are regularly kept records of the director."

See also *Frost, supra* (documents certified by the records custodian of the Bismarck Police Department and forwarded to the director are "regularly kept records"); *Salter v. Hjelle,* 415 N.W.2d 801 (N.D.1987) [a certified written report is a "regularly kept record"]. Conversely, DOT does not cite, nor are we aware of, any statute defining unsigned, uncertified documents as "regularly kept records of the director." Cf. *Holen v. Hjelle,* 396 N.W.2d 290 (N.D.1986) [construing Section 39–06–27, N.D.C.C., which allows notice of *conviction* in another state to be established by an uncertified photocopy]; *State v. Mehlhoff,* 318 N.W.2d 314 (N.D.1982) [suspension for failure to appear based upon copies of citations and letter from municipal judge, on municipal stationery, confirming that driver failed to appear]; *Andre v. North Dakota State Highway Commissioner,* 295 N.W.2d 128 (N.D.1980) [interpreting statutes that, respectively, required local officials to "certify," "notify," and "report" traffic violations, we concluded that a citation bearing an official stamp showing the date, the name of the county judge, and that the statutory fee had been paid was sufficient].

The district court in Johnson's case determined that these documents were "regularly kept records of the director" because the director was required by law to maintain them under Section 39–06–22, N.D.C.C.[4]:

"*Driving records of licensees.* The director shall file all accident reports, abstracts of court records of convictions received by the director under the laws of this state and in connection therewith maintain convenient records or make suitable notations in order that an individual record of each licensee showing the convictions of such licensee and the traffic accidents in which he has been involved shall be readily ascertainable and available for the consideration of the director upon any application for renewal of license and at other suitable times."

4. The district court actually referred to Section 39–06–02, N.D.C.C., but that reference is an obvious typographical error. We assume the court meant to cite Section 39–06–22, which requires the director to maintain records of accidents and convictions.

That statute, however, only requires that the director maintain records of accident reports and convictions in a driver's file. It does not require the director to maintain the documents forwarded in this case.

DOT also asserts that these documents, and the altered driver's licenses, were required by law to be forwarded to the director pursuant to Section 39–06–37, N.D.C.C., and Section 171.20, Minn.Stat.Ann. Neither statute, however, required the Moorhead police department or Minnesota licensing authority to forward police reports or altered licenses to the director; rather, both statutes require a *licensee,* upon notice of suspension or revocation, to forward the suspended or revoked license to the state licensing authority. See Section 39–06–37(1), N.D.C.C.; Section 171.-20(1), Minn.Stat.Ann.[5] DOT's reliance upon these statutes is wholly misplaced.

DOT has failed to cite any persuasive support for its assertion that these documents are "regularly kept records of the director" merely because they have been placed in a driver's file. As previously noted, other documents statutorily recognized as "regularly kept records" are required to bear far greater indicia of authentication and reliability. There must be a prima facie showing, in the form of a certification, that the document is what it purports to be.

We believe that, in order to be admissible as "regularly kept records of the director," a document must bear some reliable, verifiable indicia that the document is in fact what it purports to be. The documents admitted in this case are unsigned and uncertified; they bear no seal, letterhead, or other indication of official capacity; the separate "supplements" could have been prepared on any typewriter or word processor; and the record contains no evidence establishing where the documents came from. In short, these documents bear no reliable, verifiable indicia that they are in fact true and correct copies of Minnesota police records. Al-

5. We also note that the Minnesota statute has been repealed. See 1993 Minn.Laws ch. 266, § 34.

though the Legislature has liberalized some evidentiary requirements in administrative driver's license suspension proceedings [see *Salter v. Hjelle, supra* ], we do not believe the Legislature intended the procedural rules to become so lax as to allow admission of what is essentially an anonymous letter merely because it has found its way into a driver's file at DOT. Under these circumstances, we conclude that these documents are not self-authenticated as "regularly kept records of the director."

■ If the documents are not admissible as "regularly kept records," DOT must establish their authenticity with extrinsic evidence under Rule 901, N.D.R.Evid., or as self-authenticating documents under Rule 902, N.D.R.Evid. Because no extrinsic evidence was offered as to the documents' authenticity, Rule 901 does not apply. Rule 902 describes methods of self-authentication:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

"(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any State, district, commonwealth, territory, or insular possession thereof, or of the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

"(2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

\*    \*    \*    \*    \*    \*

"(4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, includ-

ing data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any law of the United States or of this State."

The documents in this case are not under seal or certified by the custodian of the records in Minnesota. Therefore, they are not self-authenticating under Rule 902.

Furthermore, admission of the unsigned, uncertified police records in this case is inconsistent with our decision in *Langer v. North Dakota State Highway Commissioner*, 409 N.W.2d 635 (N.D.1987). In *Langer*, we held that an unsigned, uncertified notice of conviction from another state did not provide a proper basis for an administrative suspension of driving privileges. It would be illogical to require a greater degree of evidentiary authentication when there has already been a conviction than when there is only an unsubstantiated complaint and investigatory report.

■ The loss of driving privileges is not insubstantial, and may entail economic hardship and personal inconvenience. *Langer, supra; Kobilansky v. Liffrig*, 358 N.W.2d 781 (N.D.1984). We will not sanction suspension or revocation of that privilege based upon evidence that is no more reliable than an anonymous letter. We conclude that the hearing officer erred in admitting the disputed documents. Because these documents provided the sole basis for the license suspensions in these cases, DOT's findings of fact are not supported by a preponderance of the admissible evidence. See Section 28–32–19(5), N.D.C.C.; *Bryl, supra*. Accordingly, we conclude that the orders of suspension must be reversed.

Peterson, Jacobson, and Johnson assert that DOT acted without substantial justification, and that they are therefore entitled to an award of attorney's fees under Section 28–32–21.1(1), N.D.C.C.:

"In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or an agent of an administrative agency, the court must award the party not an

administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and, in the case of a final agency order, determines that the administrative agency acted without substantial justification."

We have adopted the federal courts' interpretation of substantial justification:

"In *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988), the United States Supreme Court construed 'substantially justified' to mean ' "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.' The court observed that 'a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.' *Pierce, supra,* 487 U.S. at 565, 108 S.Ct. at 2550, 101 L.Ed.2d at 504. *See Minot Farmers Elevator v. Conrad,* 386 N.W.2d 463 (N.D. 1986) [declining to award attorney's fees on appeal where agency's position, while not persuasive, was reasonable]. Substantial justification thus represents a middle ground between an automatic award of attorney's fees to a prevailing party and an award of attorney's fees for frivolous claims. March 11, 1985 Minutes of House Judiciary Committee regarding SB 2403. Merely because an agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified. *Pierce, supra.*"

*Aggie Investments GP v. Public Service Commission,* 470 N.W.2d 805, 814 (N.D. 1991); see also *Service Oil, Inc. v. State,* 479 N.W.2d 815 (N.D.1992).

Although we have rejected DOT's arguments in this case, we believe they have a reasonable basis in law and fact. We decline to award attorney's fees under Section 28–32–21.1(1), N.D.C.C.

The judgments of the district court affirming the orders of suspension are reversed. We remand for entry of judgment in each case reversing the order of suspension.

MESCHKE, LEVINE and NEUMANN, JJ., concur.

SANDSTROM, J., concurs in the result.