**NORTHBROOK INDEMNITY INSURANCE COMPANY,**
Plaintiff,

v.

**WATER DISTRICT MANAGEMENT COMPANY, INC., Defendant.**

Civ. A. No. H–94–1705.

United States District Court,
S.D. Texas,
Houston Division.

July 5, 1995.

Daniel F. Shank, Davis & Shank, Houston, TX, J. David Bickham, Crosby Heafey Roach & May, Oakland, CA, for plaintiff.

David L. Capps, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending is a Motion by Plaintiff Northbrook Indemnity Insurance Company ("Northbrook") for Summary Judgment (Document No. 16). After considering the motion, response, and applicable law, the Court concludes that Plaintiff's Motion for Summary Judgment should be GRANTED.

### I. *Background*

Northbrook filed this action against Defendant Water District Management Company, Inc. ("Water District"), seeking a declaratory judgment that insurance policies of Northbrook issued to Water District do not require Northbrook to provide a defense to or indemnify Water District in connection with certain personal injury lawsuits pending in Texas state court. Specifically, Northbrook seeks a declaration that it is not obligated to provide a defense or to indemnify Water District under four one-year policies of Commercial General Liability Policy No. 703 133 for the period from October 9, 1987 to October 9, 1991 ("the policies"), in connection with a suit styled *Andrea Russell, et al. v. Neighborhood Development Corporation, et al.,* Cause No. 93–04644, in the District Court of Harris County, Texas (the "Russell suit"), and a second suit styled *Frank Gilligan, et al. v. Dannenbaum Engineering Company, et al.,* Cause No. 92–056499, in the District Court of Harris County, Texas (the "Gilligan suit"). Additionally, Northbrook seeks a declaration that the policies do not obligate it to indemnify Water District for liabilities that it may incur in connection with the underlying lawsuits. Water District contends that the policies do obligate Northbrook to defend and indemnify it in connection with the underlying lawsuits. The Court's jurisdiction is based upon diversity of citizenship.

The undisputed facts reveal that Water District operated and maintained the water works and wastewater systems for the Three Lakes Municipal Utility District ("Three Lakes MUD") between April 28, 1981, and July 31, 1989. As part of these operations, Water District would take water samples from a well (Water Well No. 1) and test them for contaminants. Water Well No. 1 supplied water to residents of the Three Lakes subdivision.

Several years after Water District had stopped operating the water system for Three Lakes MUD, it was sued in two separate actions by Three Lakes residents who alleged that "they have or will suffer bodily injury due to exposure to well water contaminated with toxic and hazardous substances, including benzene, that was discharged from the water well operated by the Water District." (First Amended Complaint for Declaratory Relief, Document No. 8, at p. 3). In March, 1993, Water District tendered these two lawsuits to its insurers, including Northbrook. Northbrook agreed to defend Water District in the *Russell* and *Gilligan* suits, subject to a full reservation of rights. Northbrook then filed this suit for a declaratory judgment and subsequently a motion for summary judgment, which the Court considers below.

### II. *Discussion*

#### A. *The Summary Judgment Standard*

Rule 56(c) provides that "[summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact

and that the moving party is entitled to judgment as a matter of law. *Willis v. Roche Biomedical Lab., Inc.,* 21 F.3d 1368, 1371 (5th Cir.1994).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex,* 477 U.S. at 323–26, 106 S.Ct. at 2553–54. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993); *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992). The nonmovant "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Krim,* 989 F.2d at 1442.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. *Anderson,* 477 U.S. at 253–56, 106 S.Ct. at 2513–14. All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994), *citing Matsushita,* 475 U.S. at 577–78, 106 S.Ct. at 1351. On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id., citing Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

■ Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. *Accord, Veillon v. Exploration Services, Inc.,* 876 F.2d 1197, 1200 (5th Cir.1989); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2728 (1983).

**B.** *Summary Judgment Evidence in the Present Case*

■ Northbrook contends that the absolute pollution exclusion provision contained in all four of its policies bars coverage for any liability arising out of the release of pollutants however caused. The relevant language from the absolute pollution exclusion states that:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a) At or from premises you own, rent or occupy;

    (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

    (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(1) if the pollutants are brought on or to the site or location in connection with such operations; or

(2) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Ex. 5, Attached to Appendix of Documents in Support of Plaintiff Northbrook Indemnity Insurance Company's Motion for Summary Judgment, Document No. 18, at pp. NOR0000770, NOR0000801, NOR0000830, NOR0000861).

In its Response, Water District basically makes two arguments. First, Water District contends that the absolute pollution exclusion is ambiguous. Second, Water District asserts that some of the claims in the underlying lawsuits fall outside the provisions of the pollution exclusion, and therefore because there are counts in the underlying complaints that should be afforded coverage, Northbrook has a duty to defend the entire suit. The Court disagrees.

The recent Texas Supreme Court case, *National Union Fire Insurance Company of Pittsburgh, Pennsylvania, et al. v. CBI Industries*, 38 Tex.Sup.Ct.J. 332, 1995 WL 584675 (Tex. Mar. 2, 1995), governs the question of whether the absolute pollution exclusion clause in this case is ambiguous. In *CBI Industries*, CBI, the insured, was supervising a periodic "turnaround" of a Texas City refinery, when by accident, a convection section of a heater unit was dropped onto a pipe connected to a storage tank which contained hydrofluoric acid, a toxic waste. Residents of Texas City brought numerous lawsuits against CBI and others in connection with the accident, alleging that they were injured when a large cloud of hydrofluoric acid was released as a result of the accident. CBI tendered these claims to its insurance companies. All of the companies denied coverage and CBI filed suit.

Thereafter, the insurance companies moved for summary judgment on the ground that the "absolute pollution exclusion" in their policies,[1] an exclusion similar to the one at issue in the instant case, precluded coverage to CBI as a matter of law. In response, CBI argued that the policies, by virtue of these exclusions, contained both patent and latent ambiguities and should not be read literally to exclude coverage for every situation involving the discharge of pollutants. The trial court granted the insurance companies' motion for summary judgment and CBI appealed the trial court's decision. On appeal, without deciding whether the "absolute pollution exclusion" is ambiguous, the court of appeals reversed and remanded the case, holding that the trial court abused its discretion when it rendered summary judgment before allowing CBI to produce evidence via formal discovery of industry-wide representations made before the Texas State Board of Insurance that might have raised a fact issue on latent ambiguity. The case was then appealed to the Texas Supreme Court.

The Texas Supreme Court reversed the court of appeals, concluding that there was no need for discovery into the parties' intentions because the absolute pollution exclusion is unambiguous. The Supreme Court stated:

> Most courts which have examined the same or substantially similar absolute pollution exclusions have concluded that they are clear and unambiguous. "This pollution exclusion is just what it purports to be—absolute ..." *Alcolac*, 716 F.Supp. 1546, 1549 (D.Md.1989). We agree. The language in this pollution exclusion is clear and susceptible of only one possible interpretation in this case.

*Id.* at 335. The trial court's grant of summary judgment was thereby affirmed.

---

1. The policies issued to CBI by the insurance companies contained a version of what is known in the industry as an "absolute pollution exclusion" which read:

    This policy does not apply to ... any Personal Injury or Property Damage arising out of the actual or threatened discharge, dispersal, release or escape of pollutants, anywhere in the world; ... "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste materials include materials which are intended to be or have been recycled, reconditioned or reclaimed.
    *Id.* at 333.

As the Texas Supreme Court has set forth in *CBI Industries*,[2] Northbrook's absolute pollution exclusion is unambiguous. Accordingly, if no ambiguity exists, it is the duty of the court to enforce the policy in accordance with its plain meaning. *Puckett v. United States Fire Insurance Co.*, 678 S.W.2d 936, 938 (Tex.1984). Applying this principle to the case at bar, the plain language of the Northbrook insurance policies excludes coverage for bodily injuries "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: (a) At or from premises you ... occupy ... or (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations ... if the operations are to test for, [or] monitor, ... the pollutants." According to Water District's admissions, the *Russell* and *Gilligan* plaintiffs assert claims that arise out of the discharge of pollutants, specifically "toxic and hazardous substances, including benzene," which escaped from the well water operated and tested by Water District for contaminants. As a matter of law the unambiguous terms of the absolute pollution exclusion clause in the Northbrook insurance policies exclude coverage of Water District for the exact kinds of risks that are the essence of the *Russell* and *Gilligan* lawsuits. Accordingly, because the *Russell* and *Gilligan* plaintiffs assert bodily injury claims that fall within the unambiguous absolute pollution exclusion of the Northbrook policies, Northbrook has no obligation to defend or to indemnify Water District for the claims.

This brings the Court to Water District's second argument. Water District alleges that some of the damages sought by the *Russell* and *Gilligan* plaintiffs are not excluded by the absolute pollution exclusion contained in each of Northbrook's policies, and therefore, Northbrook has a duty to provide coverage and defend Water District on the underlying complaints. Specifically, Water District contends that paragraphs 59[3], 60[4], 61[5], and 62[6] in the First Amended

2. This most recent Texas Supreme Court decision is also in accord with two federal district court decisions from the Southern District of Texas, Houston Division. *See Constitution State Insur. Co. v. Iso–Tex, Inc. et al.*, No. 91–2918, slip. op. at 10 (S.D.Tex. Mar. 7, 1994) (found language of an identical absolute pollution exclusion clause not to be ambiguous); *Dorsett Brothers Concrete Supply, Inc. v. Northbrook Property and Casualty Insur. Co., et al.*, No. 92–2546, slip. op. at 9 (S.D.Tex. Sept. 14, 1993) (same).

3. Paragraph 59 of the First Amended Petition in *Russell* states:

Defendants have harmed Plaintiffs and are liable to Plaintiffs under the theories of strict liability, negligence, negligence per se, gross negligence, negligent infliction of emotional distress and/or strict liability in tort (402a), Rest.2d of Torts, failure to warn, conspiracy, conspiracy to commit fraud, fraudulent concealment, breach of warranty and misrepresentation by:

a) Failing to warn clients of the hazards of the water well and the disposal facility situated on the property now known as the Three Lakes Subdivision;

b) Failing to warn clients of hazardous and/or toxic substances contained in their water well and on or near their property;

c) Failing to warn clients of hazardous and/or toxic substances disposed of at the property of the Three Lakes Subdivision;

d) Failing to do what an ordinary and prudent owner, developer, engineer, consulting engineer, constructor, installer, manufacturer or distributor would do under the same or similar circumstances.

4. Paragraph 60 of the First Amended Petition in *Russell* states:

Further, each of the Defendants are liable under 821 D et seq. of Rest.2d, of Torts that a private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. Plaintiff's [sic] will show that Defendants' [sic]

a) Invaded and disturbed Plaintiffs' interests and enjoyment of the private use of their own land;

b) Caused significant harm;

c) Caused nuisance and interference in Plaintiffs' lives that continues and recurs over a substantial period of time; and

d) Caused loss of use and enjoyment of Plaintiffs' property.

5. Paragraph 61 of the First Amended Petition in *Russell* states:

Defendants caused repeated trespasses onto Plaintiffs property when hazardous and/or toxic substances, including inter alia, benzene were delivered into their water supply.

6. Paragraph 62 of the First Amended Petition in *Russell* states:

Defendants caused repeated trespasses onto Plaintiffs property when noxious odors and fumes were released into the atmosphere from the disposal facility on the property now known as the Three Lakes subdivision.

Petition in the underlying *Russell* suit state causes of actions that are outside the pollution exclusion provision of the insurance policies.[7]

This Court has recently rejected a similar argument in *Dorsett*. In *Dorsett*, the policyholder was seeking coverage from its insurance company for a suit brought by a delivery person who was exposed to water contaminated with chemicals at the insured's facility. The policyholder argued, as does Water District, that the underlying allegations, including failure to warn or test the spillage, sounded in negligence, and therefore did not fall squarely within the pollution exclusion provision, which was nearly identical to the one in the instant case. Specifically, the policyholder claimed that the insurers were "attempting to expand the pollution exclusion provision to exclude coverage on all of the allegations in the underlying lawsuit even though some of the claims do not complain of pollutants." *Id.* at *7. The Court disagreed. In granting summary judgment, the court found that because the allegations of failure to warn and failure to test the spillage arose out of the "same nucleus of facts" as the pollution-related damages, there was no duty to defend and no coverage under the terms of the policy due to the absolute pollution exclusion.

The "same nucleus of facts" test is further explained in *American States Insur. Co. v. Skrobis Painting & Decorating, Inc.*, 182 Wis.2d 445, 513 N.W.2d 695 (App.1994). In that case, the policyholder claimed that the absolute pollution exclusion did not preclude coverage for damages sustained from a fuel spill caused by the negligence of the insured's employees. The policyholder contended that the exclusion did not apply to the spill because of its failure to clarify whether the policy excludes coverage for damage resulting from the negligence of the insured's employees or only from the pollution resulting from the spill. *Id.* at 698. In essence, the policyholder argued that the underlying claim did not arise out of the dispersal, release, or escape of pollutants, but rather

from the negligent spilling of fuel. *Id.* Again, the court disagreed, stating that:

> There is a difference between theories of liability for an occurrence and an occurrence itself. Although the theory of liability asserted may change, the occurrence that caused the injury will not. Here, application of the absolute pollution exclusion does not depend on "theories of liability" regarding whether, in some metaphysical sense, the property damage was caused by initial negligence, subsequent pollution or both, but merely on the fact or "occurrence" of property damage as a result of the pollution.

> \* \* \* \* \* \*

> [A]lthough [the insured] may view its employees' negligence as an "intervening cause," the absolute pollution exclusion of this policy specifically applies to property damage "arising out of" a spill of pollutants regardless of the theoretical source of the damage.

*Id.* at 698–99.

This holding is applicable to the case at bar. The fact that the underlying petitions allege various theories of liability, including negligence, does not change the nature of the precluded event. Because all of the underlying plaintiffs' alleged injuries arise out of discharge, dispersal, release, or escape of pollutants, the absolute pollution exclusion operates to bar coverage of all of the *Russell* and *Gilligan* plaintiffs' claims.

The Court is also not persuaded by Water District's argument that Northbrook has a duty to defend and indemnify Water District under Coverage B of the insurance policies, because some of the alleged damages are the result of "personal injury" covered under this section, which does not contain the absolute pollution exclusion provision that is found in Coverage A. The insuring agreements under Coverage B provide indemnity for "personal and advertising injury." "Advertising injury" is not implicated here. "Personal injury" is defined as "injury, other than 'bodily injury,' arising out of

---

7. After reviewing the language in the First Amended Petition in the *Russell* suit, the Court finds that although Water District has cited to paragraphs 40 and 41 in its Response, the language that Water District quotes comes from paragraphs 59, 60, 61 and 62.

one or more of the following offenses: ... (c) wrongful entry into ... a room, dwelling or premises that the person occupies." (Ex. 5, Attached to Appendix of Documents in Support of Plaintiff Northbrook Indemnity Insurance Company's Motion for Summary Judgment, Document No. 18, at pp. NOR0000776, NOR0000807, NOR0000836, NOR0000867). Water District asserts that it purchased personal injury coverage to protect specifically against wrongful entry, and therefore the claims of wrongful entry of benzene should be covered.

This argument has previously been rejected under Texas law. *See Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir. 1991); *Decorative Center of Houston v. Employers Casualty*, 833 S.W.2d 257 (Tex. App.—Corpus Christi 1992, writ denied). In *Gregory*, a case with similar facts, the Fifth Circuit affirmed the district court, which stated that to extend Coverage B to all property claims, including damages which would be covered under Coverage A, would render the pollution exclusion meaningless. *Id.* at 209. Moreover, the Fifth Circuit held that wrongful entry within the meaning of Coverage B requires active, intentional conduct by the insured. *Id.* After reviewing the underlying complaints, the Court concludes that the offenses asserted by the *Gilligan* and *Russell* plaintiffs are not of this nature. No coverage exists under Coverage B for the wrongs asserted in the underlying complaints. These claims fall within the absolute pollution exclusion under Coverage A, and Northbrook therefore has no duty to defend or indemnify Water District in the *Russell* suit or the *Gilligan* suit. Accordingly, Northbrook is entitled to summary judgment.

### III. *ORDER*

For the foregoing reasons, Plaintiff Northbrook's Motion for Summary Judgment (Document No. 16) is GRANTED, and it is ORDERED and ADJUDGED that Northbrook has no duty or obligation to defend or indemnify Defendant Water District under Northbrook Commercial General Liability Policy No. 703 133, policy period from October 9, 1987 to October 9, 1991, in the following lawsuits:

a. *Andrea Russell, et al. v. Neighborhood Development Corporation, et al.*, Cause No. 93–04644, in the District Court of Harris County, Texas; and

b. *Frank Gilligan, et al. v. Dannenbaum Engineering Company, et al.*, Cause No. 92–056499, in the District Court of Harris County, Texas.

The Clerk will enter this Order, providing a correct copy to all counsel of record.